[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff, Lisa Sullivan Haggerty, was married to the defendant, Dennis J. Haggerty, in Waterbury, Connecticut, on December 6, 1986. The parties have two (2) children born to them during the course of the marriage, Michael J., born December 31, 1986 and Margaret H., born June 3, 1989. The parties resided in the Commonwealth of Massachusetts for a time after their marriage, but have lived in the State of Connecticut since 1987.
The court heard evidence from both of the parties concerning the reasons for the breakdown of their marriage. Both expressed differing reasons for the breakdown, but both agreed that, in fact, the marriage has broken down irretrievably. The court will enter a decree dissolving the marriage.
The parties met while the plaintiff resided in Massachusetts while attending college. The defendant had been a resident of Massachusetts for most of his life, and had received an Associates Degree in architectural drafting from the Wentworth Institute in 1982. He has been employed in Massachusetts and Connecticut as an electrical estimator. As such, his earning capacity is somewhat greater than Fifty Thousand ($50,000.00) Dollars per year. The defendant claimed that the plaintiff had not been terribly successful at school, and was happy to leave to be married and to have a family. The plaintiff testified that she and the defendant felt her primary job was being a mother to their two children, and that until they are well along, she should continue to have that obligation as her primary one. The defendant claimed that he decided to explore new employment in Connecticut when the plaintiff told him she was unhappy living so far from her family. He felt that she was often depressed, and that moving to be near her family would improve her spirits.
The parties moved to Waterbury, then purchased a home through the Torrington Affordable Housing. (See Plaintiff's Exhibits 1-3.) That purchase took place on October 19, 1990. The parties moved to Torrington, and the plaintiff continues to reside in the marital home CT Page 3430 with the two children. This home, and the defendant's pension, are the two major financial assets of the marriage.
The plaintiff claims that the marriage broke down because of the emotional and physical abuse of the defendant. He denied any abuse. The plaintiff introduced into evidence, as her exhibit 5, a letter dated November 29, 1989 which confirmed the plaintiff's allegations. The plaintiff admitted that she was not competent with the family finances, although, after his knowledge and criticism of that, she continued to be in charge of bill paying. The parties seemed to understand that that was an issue for them, but the defendant seemed unwilling to accept responsibility for paying the bills in the face of the plaintiff's inability. His complaints were so focused on her inability in this regard, that it appeared to the court that he enjoyed having such a concrete failure of hers so that he could continue his criticism. Even after his verbally violent letter of late 1989, the situation did not change. His "ultimatum" did not result in 1) devorce (sic) court, 2) her "f---ing ass being out in the cold", or 3) her "living with you (sic) parents without the kids". (Pl. Exh. 5) His threat that she would have to leave without the children was unnecessarily and unrealistically brutal. Even now, he agrees to physical custody with the plaintiff-mother, so his threats were clearly designed to terrorize her to what she believed is and was her core.
The defendant also offered photographs of the marital home to demonstrate her failure as a housekeeper. These photos were taken after the separation of the parties, when the defendant would come into the home to care for the children, when plaintiff would go out to a class. What was painted was a picture of a technically-educated man who was verbally and emotionally handicapped. His attempt to picture himself as a victim was rather pathetic. What he attempted to do was to describe a caricature of the spouse he had learned to criticize. That caricature was the being who allowed him to be superior, in control. CT Page 3431
The plaintiff did not handle the finances well, but did not overspend on luxurious items for herself. She was aware of her shortcomings. She denied that her home was filthy. She admitted that the children's toys were often not picked up, but than she took decent care of them and the home. There was no evidence that the home was extraordinary. The plaintiff tried to get the defendant involved in marital counseling when they arrived in Connecticut. He discontinued the therapy after approximately three months. None of the issues that were destructive forces in this marriage were really confronted and resolved.
The parties separated after the physical abuse heightened to include the destruction of property to physical assaults, usually predicated on something that the defendant perceived that the plaintiff had failed to do in a timely manner. After a New Year's day argument in 1993, that included threats and boxes thrown at the plaintiff, being told to leave without the children, and being told that he would cut her arm off if necessary to have her give up their daughter, the plaintiff decided that her fear for her safety and that of the children required her to act. Following that weekend, she left the marital home with the children, applied for a restraining order, which was granted without objection, and returned to the family home one week later, after it had been vacated by the defendant.
During the course of the separation, the plaintiff was linked romantically for a time with another man. The defendant had perused the family home while watching the children, and had taken cards from a person who protested love for the plaintiff. The defendant then acted as a "peeping tom" and testified that he had observed her through the basement window, in the family room, "fornicating" with that person. The defendant's conduct during the parties' separation was rather sad, and it was quite apparent that he was not reconciled to the breakup. His conduct was consistent, however, with the other behaviors complained about by the plaintiff with respect to his need to control her and criticize her. CT Page 3432
She realized that she should not continue this relationship, and has terminated it. It was not a relationship which interfered with the children, and did not seem to commence until after the parties had separated. The face that the plaintiff had gone to work, and had met the individual may have had an effect on her ability to seek help to extricate herself from her marriage, which was becoming increasingly violent.
The plaintiff and the defendant are young and healthy people. The defendant has been educated for and has begun a stable and lucrative career. Although he claimed that his current job was in jeopardy because of the stress of the divorcing process, his employability is good. Notwithstanding Plaintiff's Exhibit 7, a letter of reprimand from his current employer, he, one day later, bought Two Thousand ($2,000.00) Dollars worth of furniture for his new apartment in Torrington. The court believes that in the post-judgment phase, he will reorganize his life and understand that his childrens' needs will be most importantly met if he is fully employed, and close to them so that he can continue his committment [commitment] to seeing them often. While the marriage has been immature and difficult, the parties seem to be quite dedicated parents.
The plaintiff has no education beyond high school, and has limited employment skills. She currently works outside the home as a waitress and house cleaner. She arranges her schedule to comply with the school schedule. This winter has been difficult because of the many snow days, requiring her to cancel work committments [commitments]. She will need to decide if she should return to school to be retrained to maximize her employability. Her age and the length of this marriage, along with her admission that she had contributed to the breakdown of the marriage, will require her to be able to be more responsible for herself in the future. She is lucky to have a supportive family who live close by.
The court is of the opinion that the major cause of the breakdown of this marriage was the defendant's abuse, both emotional and physical, against the plaintiff. He chose not to take responsibility for the CT Page 3433 family finances, and allowed the plaintiff to continue her mismanagement of the family income, in failing to pay bills, or paying them late. From his ultimatum in 1989, he could have taken the steps necessary to rectify that problem, but chose not to. The plaintiff agrees to be responsible for many of the family bills. The court has had the opportunity to review the facts presented at trial, the exhibits, and compare the evidence with the statutory criteria for financial awards. The court makes the following orders:
1. CUSTODY. The court will ratify the agreement of joint custody, despite the friction and lack of communication between the parties. If they have not already done so, they shall attend the parenting education program, and share any child care costs during that educational opportunity. The children will live primarily with their mother. The visitation schedule as proposed in the requested orders of the defendant shall be the order of this court, except for the request of the plaintiff that the children share the week surrounding the Fourth of July holiday with her and their grandparents. The defendant will have the right to visit with the children at least one evening per week, and that will occur on a Wednesday, unless the defendant is unavailable. If he chooses not to exercise visitation on Wednesday, he must advise the plaintiff at least twenty-four (24) hours prior thereto.
2. CHILD SUPPORT. The defendant shall pay to the plaintiff support in accordance with the child support guidelines. Currently that is forty-one (41%) percent of his net income as calculated with guideline deductions only. He shall pay to the plaintiff as child support the guidelines percentage of any bonus or other compensation received as a result of his employment.
3. MEDICAL INSURANCE. The defendant shall continue to provide medical insurance for the minor children while they are eligible for such insurance. He shall pay seventy-five (75%) percent of the unreimbursed health related expenses for the minor children, and the plaintiff shall pay twenty-five (25%) percent of such expenses. The defendant shall provide CT Page 3434 access to the plaintiff at her cost to his medical insurance under COBRA. The provisions of C.G.S. Sec.46b-84 shall apply.
4. LIFE INSURANCE. The defendant shall provide verification that he is maintaining life insurance in the face amount of One Hundred Thousand ($100,000.00) Dollars and naming the plaintiff as beneficiary thereof until his alimony obligation hereunder terminates, and thereafter, naming the minor children as beneficiaries. Nothing herein should be construed to limit the face amount of said policy. Should the defendant decide to further secure his childrens' wellbeing by additional insurance, this order does not preclude that. The naming of a beneficiary applies only to the first One Hundred Thousand ($100,000.00) Dollars of coverage.
5. ALIMONY. The defendant shall pay to the plaintiff the sum of Seventy-five ($75.00) Dollars per week in periodic alimony. The period of alimony shall be time-limited to seven (7) years and may be modifiable in terms of amount. The court is convinced that the plaintiff will not be able to earn sufficient income outside the home to keep the household comparable without the assistance of the defendant. The payment of alimony shall terminate upon the death of either party, the remarriage of the plaintiff, or her cohabitation under the terms of the statute. The award of alimony is deemed by the court to be rehabilitative.
6. PENSION. The defendant has a pension or profit sharing plan as disclosed on his financial affidavit, valued at close to Forty Thousand ($40,000.00) Dollars. The defendant has accumulated that pension in approximately four years of employment and will have reaccumulated such an amount in approximately the same amount of time. The defendant is ordered to assign by a Qualified Domestic Relations Order, fifty (50%) percent of the current value of such pension or profit sharing plan to the plaintiff. The plaintiff does not currently have a pension, and will not acquire rights to the defendant's social security level of compensation because of the length of the marriage. It is unclear that with her duties as a CT Page 3435 primary custodial parent that she will be employed in a capacity that will accrue pension or profit sharing benefits.
7. REAL ESTATE. The plaintiff has expressed a desire to attempt to retain the marital home as a home for herself and the children. There was evidence that her ability to so do was questionable. The value of the marital home was a minor issue at trial. Because the marital home had been purchased through the housing authority, there is a right of first refusal by the authority in the event of sale. There is an agreed upon formula for affixing a price of the home upon resale. Based upon the agreement of the plaintiff to pay certain debts of the marriage, and the agreement to hold the defendant harmless from any debt incident to her ownership of the marital home, the court will order that the defendant quit-claim his interest in the property at 79 Blinkoff Court in Torrington to the plaintiff. She thereafter will be responsible for carrying charges, taxes, insurance, and repairs to said property. She shall hold the defendant harmless from any obligation incident thereto.
8. MARITAL DEBTS. The plaintiff shall pay the RCD, R. Sullivan, Energy Conservation Loan, Discover Card, and Middlebury Garage debts and hold the defendant harmless therefrom. The defendant shall pay the USAA Mastercard and Card Services debts, along with any other debt listed in his financial affidavit, and hold the plaintiff harmless therefrom.
9. AUTOMOBILES. Each party shall retain the automobile currently in his or her possession, and the other party shall cooperate in completing any transfer paperwork required by the Department of Motor Vehicles. Each party shall hereafter be responsible for all costs incident to such ownership.
10. ATTORNEYS FEES. In light of the award of property distribution and periodic alimony, no contribution toward attorneys fees shall be made by either party to the other.
11. PERSONAL PROPERTY. The defendant requests the CT Page 3436 return to him of certain items of personalty now in the marital home. No evidence was adduced at trial with respect to these items. The court will require the parties to review the list requested by the defendant, and absent an agreement, the parties are ordered to hire a mediator to assist in the equitable return of at least a part of such property to the defendant. If there is no resolution, the court will retain jurisdiction on the issue of private property.
Judgment shall enter in accordance with this opinion.
DRANGINIS, J.